# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 03, 2015

## STATE OF TENNESSEE v. GLEN SEWELL

### Appeal from the Criminal Court for Shelby County
### No. 1203950     James C. Beasley, Jr., Judge

### No. W2014-00984-CCA-R3-CD  - Filed April 29, 2015

The defendant, Glen Sewell, was convicted of one count of Class D felony theft of property, two counts of Class D felony vandalism, one count of Class E felony vandalism, and one count of Class A misdemeanor vandalism. The trial court imposed an effective sentence of thirty-six years, with three twelve-year sentences for the Class D felonies to be served consecutively to each other and concurrently with a six-year sentence for the Class E felony conviction and an eleven month and twenty-nine day sentence for the Class A misdemeanor. On appeal, the defendant contends that: (1) the evidence is insufficient to support his convictions for Class E felony vandalism, Class D theft of property, and Class D felony vandalism; (2) the trial court erred when interrupting trial counsel during voir dire; (3) the trial court erred in imposing consecutive sentences. After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Lawrence White (at trial) and Barry W. Kuhn (on appeal), Assistant District Public Defenders, for the appellant, Glen Sewell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This case arose after Suzie Doyle's 1994 black Chevrolet Silverado pickup truck was stolen. Ms. Doyle testified that on February 14, 2012, she parked her truck in a Kroger parking lot before going to work. When she finished work and returned to the parking lot, she discovered that her truck was not there. Ms. Doyle had one set of keys to the truck, and her husband had the spare set. She did not leave the keys in the ignition of the car, and her husband did not use his spare set of keys to take the vehicle. She called police to report the truck as stolen.

Officers of the Shelby County Sheriff's Office in the "Alert Unit," which dealt with retail and other types of theft, developed the defendant as a suspect and began to investigate various locations where the defendant was either known to frequent or had family members. Detective Raoul Gonzalez testified that when he drove by an address on Beowolf Glade Cove, he spotted the stolen pickup truck in a driveway. Detective Gonzalez immediately notified members of the Alert Unit that he had located the vehicle. Officers arrived at the scene to set up surveillance of the vehicle and to arrest the defendant once he entered the vehicle. Detective Gonzalez, along with Detective David Ballard, Sergeant Barry Clark, and other officers, parked on Glen Birnie, a street perpendicular to Beowolf Glade Cove. Sergeant Clay Akin[1] parked at the end of Beowolf Glade Cove to observe the vehicle. Detective Gonzalez was driving a silver Chevrolet Silverado truck, and Sergeant Akin was driving a black Chevrolet Silverado truck.

When Sergeant Akin observed the defendant walking toward the vehicle, he issued the "take-down signal." Detectives Gonzalez and Ballard testified that the plan was to use their own vehicles to box the defendant into the driveway and prevent him from fleeing, with Detective Ballard to pull in behind the truck and Detective Gonzalez to pull in front of the truck. Detective Gonzalez began driving across the yard to get in front of the defendant's vehicle once he received the take-down signal. He saw the defendant get into the stolen vehicle, made eye contact with the defendant while he was in the truck, and heard "the engine at wide open throttle." Detective Gonzalez testified that once he pulled in front of the defendant, the defendant accelerated forward, hitting Detective Gonzalez's driver's side door with Ms. Doyle's vehicle.

Detective Ballard testified that once he received the take-down signal, he pulled into

---

[1] Sergeant Akin was recovering from surgery at the time of the trial and was unable to testify.

the driveway behind the stolen pickup truck, stopping about "three inches from the bumper" of the pickup. Detective Ballard exited his vehicle and began to give commands to the defendant, at which point the defendant gave Detective Ballard "kind of a grin" and "jumped in the truck." Detective Ballard got back into his vehicle and applied the brake, believing that the defendant was going to strike his vehicle. Instead, the defendant placed the truck in drive and started toward the house before making a sharp left turn to cut across the yard. Detective Ballard testified that Detective Gonzalez had not arrived in front of the defendant's vehicle before the defendant started driving but that he was instead pulling along side of the truck when his car was hit. Although Detective Gonzalez testified that he had driven in front of the defendant's vehicle before the defendant began driving, both detectives agreed that the defendant struck Detective Gonzalez's vehicle.

After striking Detective Gonzalez's truck, the defendant continued driving, proceeding through the yard of James Smithmier and toward the street. Detectives Ballard and Gonzalez drove through the yard as well in pursuit of the defendant. The defendant hit Mr. Smithmier's mailbox before driving onto Beowolf Glade Cove, where Sergeant Akin had initially set up surveillance. Both detectives testified that the defendant struck Mr. Smithmier's mailbox.

When the defendant began his flight, Sergeant Akin had started to drive toward the defendant from the end of Beowolf Glade Cove. As a result, the two vehicles were on a collision course once the defendant drove his truck onto the street. Sergeant Akin swerved his vehicle to avoid a head-on collision, but the defendant struck the side of Sergeant Akin's vehicle.

After striking Sergeant Akin's vehicle, the defendant proceeded to drive through the yard of James Walker. He smashed through a ten-foot section of Mr. Walker's fence and caused damage to the side of the house, the gutter, flower beds, and a wooden swing before crashing the pickup truck into a tree and attempting to flee on foot. Officers apprehended the defendant shortly after he exited his vehicle.

After the defendant's arrest, officers contacted Ms. Doyle to inform her that they had recovered her pickup truck. She testified that she paid "about $5,400" for the pickup truck and estimated that she spent "at least $3,000" repairing the truck after it was stolen and damaged.

Both Mr. Smithmier and Mr. Walker testified regarding the damage to their property. Mr. Smithmier testified that on the day of the incident, he viewed his mailbox in the street with mail strewn everywhere. Mr. Smithmier spent $98 on a new mailbox, and he purchased concrete and dug a hole for the mailbox. Mr. Walker testified that a photograph of Ms.

3

Doyle's truck wrecked into a tree was taken in his backyard. He estimated that the cost of repairs to his damaged property was "roughly" $3,250. The State introduced an invoice showing that the total cost of the repairs to Mr. Walker's property was $3,215.64.

Tim Albin testified that he worked for the Shelby County Sheriff's Office Fleet Operations. He testified that the vehicles driven by Detective Gonzalez and Sergeant Akin were fairly new vehicles that did not have any prior wrecks or dents. The State introduced an itemized bill showing that the cost of the parts, labor, and paint supplies to repair Detective Gonzalez's vehicle was $1,870.53. The State also introduced an itemized repair bill for Sergeant Akin's vehicle, and the total cost of the parts, labor, and paint supplies was $1,497.78.

At the conclusion of the trial, the jury found the defendant not guilty of aggravated assault of Detective Gonzalez and Sergeant Akin in Counts 1 and 2. The jury found the defendant guilty in Count 3 of vandalism of $500 or more in regards to Detective Gonzalez's truck; guilty in Count 4 of vandalism of $1,000 or more in regards to Sergeant Akin's truck; guilty in Count 5 of theft of property of $1,000 or more but less than $10,000 in regards to Ms. Doyle's truck; guilty in Count 6 of vandalism of less than $500 in regards to Mr. Smithmier's mailbox; and guilty in Count 7 of vandalism of $1,000 or more but less than $10,000 in regards to the damage done to Mr. Walker's property.

At the sentencing hearing, both parties agreed that the defendant was a career offender. The court found that three enhancement factors were applicable: (1) the defendant had a previous history of criminal history and criminal behavior in addition to those necessary to establish that the defendant was a career offender; (2) that the defendant had no hesitation of committing a crime where the risk to human life was high; and (3) the defendant used a deadly weapon during the commission of the offense. The court placed great emphasis on the defendant's criminal history and that he had no hesitation in committing crimes where the risk of human life was high. The court did not find that any mitigating factors applied. The court imposed twelve-year sentences for the convictions in Counts 4, 5, and 7; a six-year sentence for the conviction in Count 3; and a sentence of eleven months and twenty-nine days for the conviction in Count 6.

The court next addressed the issue of consecutive sentencing. The court found that the defendant was a "professional criminal who has knowingly devoted his entire adult life to criminal acts as a major source of his livelihood." The court also found that the circumstances of the convictions evinced that the defendant was a dangerous offender with little regard for human life and that the circumstances of the commission of the offenses were aggravated. The court found that the length of the sentence related to the severity of the offenses and that confinement was necessary to protect society from the defendant's criminal

lifestyle. The trial court ordered the sentences in Counts 4, 5, and 7 to be served consecutively to each other and concurrently to the sentences in Counts 3 and 6, for an effective sentence of thirty-six years.

The defendant filed a motion for new trial, which the trial court denied. He filed a timely notice of appeal, and we proceed to consider his claims.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant contends that the evidence is insufficient to sustain his convictions in counts three, four, five, and seven. Specifically, he contends that there was no evidence that the damage repairs authorized for Detective Gonzalez's truck were for damage caused by the defendant or that the defendant knowingly drove Ms. Doyle's truck into Detective Gonzalez's truck; that the evidence is insufficient to show that he intended to deprive Ms. Doyle of her vehicle permanently; that there was a material and fatal variance between the indictment and proof at trial because the indictment in count four listed the victim as "Richard Aitken" but the name of the victim was actually Clay Akin; and that the evidence is insufficient to show that the defendant caused $1000 or more in damage to Mr. Walker's yard because the indictment listed only a wooden fence as the property damaged, while proof was adduced at trial of damages in addition to the fence.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

## A. Count Three: Vandalism Over $500

The defendant contends that the evidence is insufficient to sustain this conviction because Mr. Albin did not testify that the damage for which he authorized the repair of Detective Gonzalez's vehicle were the same damages Detective Gonzalez testified that the defendant caused. Additionally, he contends that there is no evidence that he knowingly drove his vehicle into Detective Gonzalez's truck.

An individual commits the crime of vandalism who "knowingly causes damage to or the destruction of any real or personal property of another or of the state . . . knowing that the person does not have the owner's effective consent." T.C.A. § 39-14-408(a)(2010). The State must also prove the value of the property damage. *See* T.C.A. § 39-14-408(c). Valuation is based upon the "fair market value of the property" at the time of the offense or, "if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." T.C.A. § 39-11-106(a)(36)(A)(i)-(ii). This court has held "that the value of the cost of repairs is an appropriate means of determining the value of the damage sustained to the vandalized property." *State v. Jimmy Dewayne Lentz*, No. M2006-01774-CCA-R3-CD, 2007 WL 2350102, at *3 (Tenn. Crim. App. Aug. 13, 2007) (citing cases).

Detective Gonzalez testified that the defendant struck the driver's side door of his silver Chevrolet Silverado pickup truck. The State introduced several photographs showing damage on the driver's side door of a silver Chevrolet Silverado truck, and Detective Gonzalez identified the truck in the photograph as belonging to him. While Mr. Albin did not testify that he authorized the specific repair of the driver's side door of Detective Gonzalez's truck, he testified that the truck was a fairly new addition to the fleet of cars used by the Shelby County Sheriff's Office and that is had no prior dents, bumps, or scratches. Detective Gonzalez also testified that his truck had no damage prior to the incident with the defendant. An itemized repair bill was introduced showing that the costs for parts, labor, and paint supplies to repair Detective Gonzalez's truck totaled $1,870.53. However, it was within the purview of the jury to find that certain repair costs were attributable to the defendant's actions. We conclude that the evidence was sufficient for a jury to find that the damage Mr. Albin authorized the repair for was the same damage caused by the defendant and that the damage exceeded $500.

The evidence was also sufficient for a jury to find that the defendant knowingly struck Detective Gonzalez's vehicle. Although there was some discrepancy as to precisely when Detective Gonzalez pulled in front of the defendant's vehicle, both officers testified that before the defendant began driving, they made eye contact with him and heard him "rev" the engine. The officers approached the defendant with their lights and sirens activated. A

reasonable jury could conclude that the defendant realized that the police were at the scene to arrest him and attempted to flee, knowingly striking Officer Gonzalez's car in the process. The defendant is not entitled to relief as to this issue.

## B. Count Five: Theft of Property Over $1,000

The defendant argues that the evidence is insufficient to sustain his conviction for theft of property over $1,000. Specifically, he contends that there is no evidence to show that he intended to deprive Ms. Doyle of the ownership of her vehicle and suggests that the proof is sufficient to convict him only of "joyriding."

An individual commits the offense of theft of property who knowingly obtains or exercises control over the property without the owner's effective consent and does so with the intent to deprive the owner of the property. T.C.A. § 39-14-103(a). Tennessee Code Annotated section 39-11-106 defines "deprive" as "to [w]ithhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." This offense "may be accomplished in one of two manners: (1) taking or obtaining property without consent and with an intent to deprive; or (2) exercising control over property without consent and with an intent to deprive." *State v. Byrd*, 968 S.W.2d 290, 292 (Tenn. 1998). Here, the defendant was charged and convicted under the theory of exercising control over property.

Ms. Doyle testified that her husband had the spare set of keys to her truck and that he did not take the car. The truck was missing for nine days, and officers discovered the truck when they were investigating locations that the defendant was known to frequent or where he had family members. Officers witnessed the defendant get into the driver's seat of the truck. After the defendant saw police officers approach with their lights and sirens activated, he attempted to flee in the truck, driving through three yards and striking two police cars before crashing the car into a tree and attempting to flee on foot. Ms. Doyle testified that she initially paid around "$5,400" for the truck. We conclude that the evidence is sufficient to support a finding that the defendant intended to exercise control either permanently or for a period of time so as to substantially diminish the value or enjoyment of property valued at more than $1,000 but less than $10,000.

## C. Count Four: Vandalism Over $1,000

The defendant contends that there is a material and fatal variance between the indictment and the proof adduced at trial. Specifically, he contends that the indictment stated that the vehicle belonged to "Richard Aitken," while the proof at trial showed that the vehicle belonged to Sergeant Clay Akin.

In the past, Tennessee adhered to a rigid application of the common law rule of variance, which required that "if a person or thing necessary to be mentioned in an indictment is described with greater particularity than is requisite, such person or thing must be proved exactly as described in the indictment." *State v. Johnson*, 596 S.W.2d 97, 102 (Tenn. Crim. App. 1979) (citation omitted), *overruled by State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). In *State v. Moss*, our supreme court adopted the more modern interpretation of the rule in which "substance rather than form is now determinative" regarding discrepancies between the charging instrument and the proof at trial. *Moss*, 662 S.W.2d at 592. In order to be fatal, a variance must be "material and prejudicial." *Id.* A variance "is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial[,] and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *Id.* A variance is not prejudicial "'(1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense.'" *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1984) (quoting *Moss*, 662 S.W.2d at 592).

The defendant made no objection to the indictment during the trial, and he did not raise the issue of variance in his motion for new trial. Therefore, this issue is waived. *See* Tenn. R. Crim. P. 12(b)(2)(B), (f) (stating that motions alleging a defect in the indictment must be raised prior to or during the trial or the objection is waived); *State v. Nixon*, 977 S.W.2d 119, 120-121 (Tenn. Crim. App. 1997) (only objections that challenge the subject matter jurisdiction of the court or objections alleging that the indictment failed to state an offense may be raised "at any time during the pendency of the proceedings").

In any event, the variance between the indictment and the proof at trial was neither material nor prejudicial. When the indictment and the proof at trial differ as to a person named in the indictment, and the name is not an essential element of the offense, any variance is not fatal if the defendant was sufficiently apprised of the charged offense so that he was able to prepare an adequate defense without being misled at trial, and if the defendant was protected from double jeopardy concerns. *Mayes*, 854 S.W.2d at 641 (concluding that when an indictment incorrectly identified the purchaser in a drug deal but sufficiently apprised the defendant of the offense he was charged with, allowed him to adequately prepare a defense without being misled at trial, and provided him with protection from double jeopardy, there was not a fatal variance); *see also State v. Mark A. Ammons*, No. M2006-00286-CCA-R3-CD, 2007 WL 1790450, at *8 (Tenn. Crim. App. June 21, 2007) (concluding that there was no fatal variance when an indictment named "Margie Adams" as the victim but the proof at trial showed that the victim was actually "Ramona Reid" because the name of the victim was not an essential element of the crime of assault); *State v. William*

*Edward Watkins*, No. 01C01-9701-CC-00004, 1997 WL 766462, at *2 (Tenn. Crim. App. Dec. 12, 1997) (concluding that there was no material or prejudicial variance when indictment named the victim as "Edward Sensor" and the State offered proof at trial that the victim was named "Elwood Sinson").

Here, the indictment sufficiently apprised the defendant that he was charged with vandalism of $1,000 or more, permitted the defendant to adequately prepare a defense before trial, and did not place him at risk of a second prosecution for the same offense. The indictment contained all of the essential elements of the crime of vandalism of $1,000 or more and included the date of the offense. The defendant was on notice that he was called to defend himself against the charge of damaging real or personal property of a specified value of $1,000 or more but less than $10,000 on the date alleged in the indictment, allowing him to adequately prepare for trial. Finally, the defendant is protected from any subsequent prosecution for the same offense. Contrary to the defendant's assertion, there were not "numerous vehicles for which the [defendant]could later be indicted for vandalizing." The proof at trial showed that the defendant struck only two vehicles: the truck of Sergeant Akin and the truck of Detective Gonzalez. "The [d]efendant can rely upon the entire record in the event that future proceedings are taken against him" for the vandalism of Clay Akin's vehicle. *Mayes*, 854 S.W.2d at 642. The defendant is not entitled to relief as to this issue.

### D. Count Seven: Vandalism Over $1,000

The defendant's contention here is two-fold. First, he argues that the admission of the evidence of additional damages to Mr. Walker's property created a fatal variance between the indictment and the proof at trial. Second, he argues that the evidence was insufficient to support his conviction of vandalism of over $1,000 because the indictment identified only the wooden fence as the vandalized property, and the proof at trial showed that the value of the damages to the fence was $645.84.

The indictment for count seven charged that the defendant:

on February 23, 2012[,] in Shelby County, Tennessee, and before the finding of the indictment, did unlawfully and knowingly cause damage in the amount of $1000 or more but less than $10,000 to the real or personal property, to wit: a Wood Fence, of JAMES WALKER without his effective consent, in violation of T.C.A. [§] 39-14-408, against the peace and dignity of the State of Tennessee.

A variance may exist where the indictment contains "surplusage." *State v. March*, 293 S.W.3d 576, 588 (Tenn. Crim. App. 2008). The term "surplusage" "denotes surplus

9

language in the charging instrument." *Id.* An indictment containing surplusage will not be fatally defective "if, after eliminating the surplusage, the offense is still sufficiently charged." *Id.* If the fact alleged in an indictment is "a matter legally essential to the charge, then it must be proven to the degree of detail alleged." *State v. Culp*, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994). However, if the surplusage is not connected to an essential element of the offense, "it need not be proven at all." *Id.*

The offense of Class D felony vandalism has five essential elements: (1) that the defendant act knowingly; (2) cause damage or destruction; (3) of any real or personal property of another; (4) without the owner's effective consent; and (5) in an amount of $1,000 or more but less than $10,000. T.C.A. § 39-14-408(a), (c); T.C.A. § 39-14-105(a)(3). Tennessee Code Annotated section 39-11-106(a)(28) defines property as "anything of value, including, but not limited to, money, real estate, tangible or intangible personal property, including anything severed from land, library material, contract rights, choses-in-action, interests in or claims to wealth, credit, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power." Tennessee Code Annotated section 39-14-408 does not require the property damaged to be a wooden fence or any other specific type of property, and the identification of the property is not an essential element of the offense. Therefore, the language "to wit: a Wooden Fence" in the indictment was surplusage. *See March*, 293 S.W.3d at 589-90 (stating but not deciding that because the statute defining theft of property did not require the property to be a specific kind of property, inclusion of the phrase "to wit: United States currency" identifying the property in the indictment could be viewed as surplusage); *State v. Jones*, 953 S.W.2d 695, 697, 700 (concluding that when an indictment charged the defendant with unlawful sexual penetration of the victim "by fellatio" but the proof at trial showed other forms of penetration, the phrase "by fellatio" was surplusage because the definition of "sexual penetration" included the terms "sexual intercourse, cunnilingus, [and] fellatio," and the offense was sufficiently charged when the surplus language was eliminated).

Once the surplusage is removed, the indictment still sufficiently charges the defendant with the offense of Class D vandalism. The indictment includes all of the essential elements of the offense, stating that the defendant knowingly caused $1,000 or more but less than $10,000 in damages to the real or personal property of the owner without the owner's effective consent. The indictment further specifies the name of the victim and the date of the offense. The indictment contains sufficient information to apprise the defendant of the nature of the charge and to allow him to prepare a defense. Additionally, the record of these proceedings protects the defendant from a second prosecution for vandalism at the time and place specified in the indictment. *See Mayes*, 854 S.W.2d at 642. Although the better practice would have been to include in the indictment either all of the property alleged to have been damaged or to omit the identification of the property entirely, we conclude that the

indictment was not fatally defective.

The defendant also argues that the trial court erred in denying his motion in limine to limit the proof of the damages to the value of the fence. He contends that the evidence of additional damages was not relevant and rendered the indictment constitutionally insufficient, as it did not fully inform the defendant of the nature and cause of the accusation against him. As we concluded above, the inclusion of the phrase "to wit: a Wooden Fence" was surplusage, and the indictment was not fatally defective. Therefore, we need address only the issue of whether the trial court erred in denying the motion in limine.

In order to be admissible, evidence must first be relevant. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Once the court concludes the evidence is relevant, the court should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). The trial court possesses the sound discretion to determine the admissibility of evidence, and we review a trial court's denial of a motion in limine to restrict the admission of evidence under an abuse of discretion standard. *See State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004). A trial court does not abuse its discretion unless it "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *Id.* (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

We conclude that the trial court did not abuse its discretion in denying the defendant's motion in limine. Because the identification of the wooden fence was surplusage, it was not necessary to limit the proof of the damages only to the fence, and the evidence of the additional damages was relevant and therefore admissible. To obtain a conviction for Class D vandalism, the State must prove that the damages were $1,000 or more but less than $10,000. The proof of the damages to Mr. Walker's yard and house was extremely relevant to show that the defendant caused $1,000 or more but less than $10,000 in damages. The trial court properly allowed the State to admit proof of damages in addition to those of the fence.

We next conclude that the evidence was sufficient to support the defendant's conviction of Class D felony vandalism. Officers testified that the defendant drove Ms. Doyle's truck through Mr. Walker's yard, smashing through a fence before hitting a tree. Mr. Walker confirmed that photographs showing Ms. Doyle's truck crashed into a tree depicted his backyard, and he stated that no one had permission to be in his backyard. Mr. Walker testified that in addition to the damages to his fence, the side of his house, a

downspout, flower beds, and a wooden swing were damaged. He estimated that "roughly $3,250" was spent on repairs, and a bill from his insurance company showed that the total cost of repairs was $3,215.64. A reasonable jury could find that the defendant knowingly caused $1,000 or more but less than $10,000 in damages to Mr. Walker's real or personal property without Mr. Walker's effective consent. The defendant is not entitled to any relief.

## II. Voir Dire

The defendant argues that the trial court erred by interrupting trial counsel during voir dire. Specifically, he contends that the interruption insinuated to the jury that trial counsel "was asking the jury to do something contrary to the law and prejudiced the jury against the [defendant]."

During voir dire, trial counsel proposed a hypothetical to the jury where a wife was on trial for first degree murder. In this hypothetical, the wife shot her husband and sister after walking in on the two having an affair, and she confessed the crime to police. Trial counsel engaged in a discussion with a juror, asking if, based on the facts of the hypothetical and after the judge had charged the jury that the law on first degree murder required premeditation and the law on second degree murder required no premeditation, the juror would return a verdict of guilty of second degree murder. The juror indicated that he would need more facts to make a decision, and counsel continued to press him to make a decision based upon the facts that trial counsel provided. The trial court interrupted, stating that it was not comfortable with trial counsel's hypothetical and that the question should have been "will you apply the law to the facts and not just based on statements or based on arguments? Would you follow the law?"

Trial counsel requested a bench conference, and the trial court further explained why it interrupted during trial counsel's hypothetical. The court stated that it did not like questions that required commitment from the jury. The court further opined that it did not take issue with questions requiring the jury to commit to returning a verdict of not guilty if the State did not meet its burden of proof or to commit to considering lesser included offenses. However, the trial court found that trial counsel's hypothetical was inappropriate because it asked the jurors to commit to a set of facts and return a verdict of voluntary manslaughter when the facts as given, while likely to result in a voluntary manslaughter conviction, also supported a finding of first degree murder. The court stated that the better question was whether the jury could follow the law as it applied to a set of facts.

The Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee a defendant the right to a trial by an impartial jury. The purpose of voir dire is to ensure that the jury is fair and impartial, and the

12

trial court possesses the sound discretion to determine how the voir dire process is conducted. *State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012); *State v. Howell*, 868 S.W.2d 238, 247 (Tenn. 1993). This court will not overturn the decision of the trial court unless the trial court abused its discretion. *Id.*

The defendant has not established that the trial court abused its discretion in limiting trial counsel's questioning of a juror. Trial counsel was not merely asking the jury if they would return a verdict of guilty to a lesser included offense. Instead, trial counsel was arguing with a juror in an attempt to get the juror to commit that second degree murder was the only conviction that would be appropriate for trial counsel's hypothetical set of facts. The court found that trial counsel's hypothetical was inappropriate and misleading and interrupted to clarify the question, which it possessed the sound discretion to do. The defendant is not entitled to any relief as to this claim.

### III. Consecutive Sentencing

The defendant argues that the trial court erred in imposing consecutive sentences. He does not contend that the trial court erroneously applied a factor for consecutive sentencing, but he states that this court should consider that his prior criminal history was due to his drug addiction and that the majority of his convictions were for theft or burglary, crimes which did not involve harm or injury to another.

A trial court's decision to impose consecutive sentencing is reviewed under an abuse of discretion standard accompanied by a presumption of reasonableness, so long as the trial court states for the record that the defendant falls into one of seven categories enumerated in Tennessee Code Annotated section 40-35-115(b). *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). In order to impose consecutive sentences on the basis that the defendant is a dangerous offender, the trial court "must conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Id.* at 863 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)). So long as the "trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

The trial court found that three factors applied to warrant consecutive sentencing: (1) the defendant was a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood; (2) his criminal record was extensive; and (3) he was a dangerous offender with little to no regard for human life and no hesitation about committing a crime where the risk to human life was high. *See* T.C.A. 40-35-115(b)(1)(2), (4). After

finding that the defendant was a dangerous offender, the court made the additional required findings that consecutive sentences were reasonably related to the seriousness of the offenses and that confinement was necessary to protect the public from further criminal acts of the defendant. *See Wilkerson*, 905 S.W.2d at 938. The court also found that consecutive sentences were reasonably related to the seriousness of the offenses and that confinement was necessary to protect the public from further criminal acts of the defendant. Further, the trial court recognized that the defendant had a drug problem but observed that, despite receiving probation multiple times to address his issues with drugs, the defendant continued his pattern of an "anti-societal lifestyle." The trial court considered the applicable factors and did not abuse its discretion in imposing consecutive sentences. The defendant is not entitled to any relief.

## CONCLUSION

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

14